## WHITE v. AMRHIEN.

1. The question of boundary between two quarter sections, the original monuments at the quarter section corners between the two sections having been long destroyed, is for the jury; plaintiff, to establish these corners according to his contention, having introduced the evidence of surveyors, who claimed to have established the points at which the government mounds formerly stood by surveys made in accordance with the original government field notes showing the courses and distances, in connection with the existing monuments, and defendant having introduced the testimony of witnesses who gave from recollection the points where the mounds stood.

2. Requested instructions, prepared and handed to the court after the arguments were commenced, contrary to the rules of the court, are properly disregarded by it.

(Opinion filed February 12, 1901.)

Appeal from circuit court, Hamlin county, HON. JULIAN BENNETT, Judge.

Action by Thomas White against Joseph Amrhien. Judgment for plaintiff. Defendant appeals. Affirmed.

The facts are stated in the opinion.

*D. C. & W. R. Thomas,* for appellant.

*Cheever & Hall,* and *Aubrey Lawrence,* for respondent.

CORSON, J. This is an action brought originally in a justice's court to recover as damages the value of certain crops alleged to have been taken from a portion of a quarter section of land in Hamlin county. A question of title or boundaries being raised by the answer, the case was certified to the circuit court, where the same was tried by the court and jury, a verdict and judgment rendered in favor of the plaintiff, and the defendant appeals.

The controversy is in regard to the ownership of a strip of land between two adjoining quarter sections upon which the crops were grown, being about eight or nine rods in width, and extending across the quarter section. The plaintiff contends that the strip of land is part of his quarter section as the same was originally surveyed and marked by the government surveyor. The defendant, on the other hand, contends that the strip of land constitutes a part of his quarter section as originally surveyed. The original government monuments are not now to be found at the quarter section corners between the two sections, the same having been obliterated or destroyed many years ago. The plaintiff, to establish these corners, introduced the evidence of two surveyors, who claim to have established the points at which the government mounds formerly stood, by surveys made in accordance with the original government field notes, showing the courses and distances, in connection with the existing monuments. It was also shown by the plaintiff that a survey of the line between the two quarter sections was made, in which the defendant took part, which resulted in fixing the line at the points now claimed by plaintiff. The defendant, on the other hand, introduced witnesses who testified that in 1882 or 1883 they saw the original mounds and stakes placed by the government surveyors, and they described from recollection the points where these mounds were originally located, and the points indicated by said witnesses would seem

to sustain the defendant's theory as to the position of the original monuments. It will thus be seen that the question of where the original government line was established was a question of fact for the jury. It is contended on the part of the appellant that the evidence of the witnesses on his part as to the location of the original government mounds and stakes was uncontradicted; hence their testimony must be regarded as conclusive as to the points where the original monuments stood. But this contention is not tenable. The evidence of these witnesses was given simply from recollection, and, no monuments being now in existence, cannot be held as conclusive, but, like other evidence, was only entitled to be considered by the jury. The primary object of all investigations of boundaries is to ascertain the original corners as established by the government survey, and, when those corners and monuments can be found and identified as the original government corners, they must govern; but when those original government mounds have been obliterated or lost, it becomes necessary to establish the corners by the best evidence obtainable. In the absence of the mounds themselves, the field notes, giving the courses and distances of the original survey, may be used for the purpose of locating the lost corners. Arneson v. Spawn, 2 S. D. 269, 49 N. W. 1066; Randall v Burk Tp., 4 S. D. 337, 57 N. W. 4; Hanson v. Redrock Tp., 4 S. D. 358, 57 N. W. 11. Evidence as to the recollection of witnesses as to where the mounds originally stood is also admissible, and it is for the jury to determine and establish from all the evidence the location of the original monuments as made by the government surveyor. In the case at bar the northeast, northwest and southwest corners of the section as originally located by the government surveyors, were found and identified by the surveyors, as were also three quarter-section corners. Certainly, under such circumstances, it was easy for a surveyor, with

the aid of the field notes of the original survey, to locate, with approximate accuracy, at least, the two quarter-section corners between the quarter sections in dispute. But, without discussing the subject further, it is sufficient to say that the evidence in regard to the position of the original mounds was, to a certain extent, conflicting, and, the case having been fairly left to the jury, we are not inclined to disturb their verdict.

The instructions requested of the court seem to have been prepared and handed to the court after the arguments were commenced, contrary to the established and fixed rules of that court, and hence were properly disregarded by it; but, if this ruling was not correct, the law as laid down in those instructions was substantially given to the jury by the court in the charge, upon its own motion.

We have not deemed it necessary to discuss the several assignments of error separately, but have considered all of them. Finding no error in the record, the judgment and order denying a new trial are affirmed.